**SO ORDERED.**

**SIGNED October 27, 2021.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| In re:<br>Linder Oil Company,<br>A Partnership<br>_Debtor_ | Case No. 17-51323<br><br>Chapter 7 |
| Lucy G. Sikes, Chapter 7 Trustee, and<br>The Cadle Company II, Inc.<br>_Plaintiff_<br><br>v.<br><br>Crescent Bank & Trust, et al.<br>_Defendants_ | Judge John W. Kolwe<br><br>Adv. Proc. No. 19-5105 |

### MEMORANDUM OPINION

Before the Court are three motions filed by one of the defendants in this action, Crescent Bank & Trust ("Crescent"): a Motion for Partial Summary Judgment based on prescription (ECF #162); Crescent's third Motion to Dismiss, this time asserting res judicata and Article III standing as grounds to preclude this action (ECF #165); and a Motion to Reconsider Transferring Venue to the Eastern District of Louisiana (ECF #172). The Court took these matters under advisement following oral argument.

The Court has considered the parties arguments, pleadings and other relevant sources, and rules as follows.

## Background[1]

### Linder Oil's Bankruptcy and Cadle's Interests

This adversary proceeding arises out of the Chapter 7 bankruptcy case of Linder Oil Company, a Partnership ("Linder Oil" or "Debtor"), which was filed on October 10, 2017; Lucy G. Sikes is the duly appointed Chapter 7 Trustee in the case. On the petition date, Linder Oil was the contract operator of certain oil and gas wells owned by Reserves Management, LC ("Reserves") and Destin Resources, LLC ("Destin"), which are companies related to Linder Oil through common ownership. Reserves and Destin also filed Chapter 7 cases in this Court on December 4, 2017 and December 18, 2017, respectively.

The Cadle Company II, Inc. ("Cadle"), is the successor-in-interest to First NBC Bank ("First NBC") with respect to certain loans made to Destin and Reserves, and is the largest creditor in the Linder Oil, Destin, and Reserves bankruptcy cases. First NBC's and Cadle's relationship to Linder Oil is briefly described as follows. Beginning in 2009, First NBC made a series of loans to Destin and Reserves. The loans were secured by mortgages and security interests granting First NBC a lien over all mineral interests owned by Destin and Reserves in Louisiana, including all extracted collateral from those interests. Destin executed a commercial guaranty in favor of First NBC guaranteeing Reserve's obligations to First NBC, and Reserves executed a similar agreement guaranteeing Destin's obligations to First NBC. Linder Oil also executed a commercial guaranty in favor of First NBC, thereby guaranteeing both Destin's and Reserve's obligations to the bank. Additionally, any and all proceeds of production from Destin's and Reserves' mineral interests served as First NBC's collateral.

---

[1] For purposes of this ruling, which largely concerns a Motion to Dismiss under Federal Rule of Civil Procedure 12, the Court must assume "that all the allegations in the complaint are true (even if doubtful in fact)," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007), so the facts set out herein are taken either from the Complaint or from judicially noticed facts.

2

In April 2017 the State of Louisiana closed First NBC, and the FDIC was appointed receiver. On September 28, 2017, the FDIC sold to Cadle all the notes, mortgages, guaranties, and related loan agreements between and among Linder Oil, Destin, Reserves, and First NBC. Cadle filed proofs of claim in the Linder Oil, Destin, and Reserves bankruptcy cases asserting a claim in each of those cases in excess of $122 million.

On March 6, 2018, this Court granted Cadle's motion to lift stay and entered an Order requiring the Trustee to abandon and surrender certain property in the Linder Oil case to Cadle.[2] Specifically, this Order authorized Cadle "to take possession of any and all funds received by the trustee in [Linder Oil's case] that are attributable to the mineral interests of Destin Resources, LLC or Reserves Management, L.C., and to apply those funds to the obligations owed to" Cadle as successor to First NBC.[3] This Order also directed Lucy Sikes, in her capacity as Linder Oil's Trustee, "to abandon" all proceeds attributable to production from Destin and Reserves mineral interests operated by Linder Oil "and to turn over such sums as are currently in her possession, or that are received in the future," to Cadle "as they are received."[4] The Court entered similar orders in both the Destin and Reserves bankruptcy cases. Despite lifting the stay, Cadle has remained an active participant in the Linder Oil, Destin, and Reserves bankruptcy cases.

In October 2019, Cadle and Ms. Sikes, in her capacity as Linder Oil's Trustee, entered into two agreements: an Asset Purchase Agreement and a Litigation Agreement, both of which have been amended.[5] Taken together, these agreements, as amended, and as approved by the Court, resulted in the Trustee assigning to Cadle all claims owned by the Linder Oil bankruptcy estate, including all claims related to

---

[2] *In re Linder Oil Company*, Case No. 17-51323, ECF #135.

[3] *Id.*

[4] *Id.*

[5] The Court approved the original version of the Litigation Agreement on October 3, 2019 (ECF #562), the first amended version on October 9, 2019 (ECF #569), and the currently applicable amended version on February 26, 2021 (ECF #747).

3

open accounts and loans owed to Linder Oil by third parties, *except* claims that the Trustee may have against any person under Chapter 5 of the Bankruptcy Code, which the Trustee specifically retained. Cadle also disclosed in the agreements, and the Trustee acknowledged, that Cadle possessed its own, independent claims against some of the same targets as the Trustee, and Cadle retained the right to pursue its own claims against those persons.

The Litigation Agreement, as amended, operates such that Cadle agrees to fund the Trustee's litigation costs, but the Trustee retains ultimate say in how her own claims are resolved. It also provides that the Trustee and Cadle will share all recoveries from Cadle's and the Trustee's claims in certain percentages set forth in the amended agreement.

<u>General Background and Procedural History of this Adversary Proceeding through Crescent's First Motion to Dismiss</u>

On October 9, 2019, the Trustee and Cadle filed the Original Complaint commencing this adversary proceeding, naming Crescent, Consolidated Reserves Company, L.C. ("Consolidated"), Roger D. Linder, G. Miles Biggs, Jr., Louisiana General Oil Company ("Louisiana General") and Linder Energy Company ("Linder Energy") as defendants.

With respect to Crescent, the Complaint alleges that Crescent made a $6,000,000 loan to Consolidated that was secured not by the assets of Consolidated, but rather the personal guaranties and assets of Roger D. Linder and G. Miles Biggs, Jr. because, according to the Complaint, Consolidated was insolvent and had no sources of income to repay the loan. The Complaint further alleges that Linder Oil transferred funds to Consolidated that were booked on Linder Oil's books as loans to Consolidated, and that those funds were then used by Consolidated to pay down the Crescent loan, which ultimately benefitted Mr. Linder and Mr. Biggs, as guarantors of Consolidated's debts to Crescent. The Complaint also alleges that Crescent knew Consolidated was insolvent and had no source of revenue to repay the Crescent loan.

4

The Complaint mostly characterizes the source of the transfers from Linder Oil to Consolidated as First NBC's collateral, i.e., proceeds from the Destin and Reserves mineral interests which allegedly were the proceeds of First NBC's, and later, Cadle's, collateral. But paragraph 54 of the Amended Complaint indicates that some of those transfers may have come from other sources, such as "the loan funds from First NBC."[6] The same paragraph alleges that "Crescent knew that Consolidated did not give reasonably equivalent value, or any value whatsoever, to the Debtor in return for the Transfers."[7]

The Original Complaint sets forth three claims against Crescent, two by Cadle and one by the Trustee. Cadle's claims are set forth in Count 1, a tort claim under Louisiana law for conversion, and Count 2, a claim for unjust enrichment, which is a quasi-contractual claim under La. Civ. Code art. 2298. The Trustee's claim is set forth in Count 6, and represents a claim for recovery against a transferee under 11 U.S.C. § 550 of the Bankruptcy Code.

On January 7, 2020, Crescent filed a Motion to Dismiss (ECF #41), Motion for Abstention (ECF #43), and Motion to Transfer Venue to the United States District Court for the Eastern District of Louisiana (ECF #45). Crescent argued in both the Motion to Dismiss and the Motion for Abstention that Cadle's state-law claims in Counts 1 and 2 emanated from Cadle's status as successor-in-interest to First NBC, and thus were completely different from the Trustee's claims in Count 6, which arises under the Bankruptcy Code. In the Motion to Dismiss, Crescent claimed the court did not have subject matter jurisdiction over Cadle's state-law claims. Alternatively, Crescent argued in the Motion for Abstention that the court should abstain from hearing Cadle's claims, especially since Cadle was already pursuing similar claims against some of the same defendants in this adversary proceeding in several other actions pending in various Louisiana state courts and in federal court in New Orleans.

---

[6] *See* Amended Complaint, ¶ 54 (ECF #74).

[7] *Id.*

19-05105 - #206   File 10/27/21   Enter 10/27/21 15:31:18   Main Document   Pg 5 of 21

The Court held hearings on Crescent's motions on February 11, 2020 and April 7, 2020, and at the second hearing it orally granted the Motion for Abstention as to Counts 1 and 2, denied the Motion to Transfer venue, and denied the Motion to Dismiss as moot but required the Trustee to amend the complaint. The Court entered an Order to that effect on May 1, 2020 (ECF #71).

## The Eastern District Litigation

After the Court granted Crescent's Motion for Abstention, Cadle filed a Complaint in the Eastern District of Louisiana on April 22, 2020, Civil Action No. 2:20-cv-01260 (the "Eastern District Action"), naming Crescent, Consolidated, Roger D. Linder, G. Miles Biggs, Jr., Louisiana General, and Linder Energy as defendants. Cadle asserted only the conversion and unjust enrichment claims in this action, i.e., the Trustee was not a party to the suit, nor did Cadle assert the § 550 claim at issue in this adversary proceeding.[8] (The Eastern District Action was later consolidated with two other suits by Cadle which were then pending in Louisiana's Eastern District which also named as defendants some of the same companies and individuals that are named as defendants in this adversary proceeding.)

Crescent, along with the other defendants, filed Motions to Dismiss on various grounds, including prescription and failure to state a claim upon which relief can be granted on all claims. On August 19, 2020, the Eastern District entered an Order and Reasons granting the Motions to Dismiss in part, denying in part, and deferring in part (ECF #65). Specifically, the Eastern District dismissed the unjust enrichment claim with prejudice on the ground that such a claim may be pursued under Louisiana law only if no other remedy is available, and Cadle was already pursuing another remedy in the conversion claim. The Eastern District denied the Motions to Dismiss as to the conversion claim, concluding that Cadle had pleaded enough facts to support a claim. However, the Court deferred ruling on the prescription arguments,

---

[8] Indeed, the Trustee has exclusive standing to pursue the Chapter 5 claims under the Bankruptcy Code. *See Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."); *In re Wilson*, 527 B.R. 253 (Bankr. N.D. Tex. 2015) ("Avoidance actions belong to the estate." (collecting cases)).

19-05105 - #206  File 10/27/21  Enter 10/27/21 15:31:18  Main Document  Pg 6 of 21

converting them to Motions for Summary Judgment and ordering Cadle to file an explanation and evidence supporting its contention that the conversion claim had not prescribed on its face.

Cadle filed the required Response on August 21, 2020 (ECF #66), but on September 3, 2020, it filed an Ex Parte Motion to Withdraw it (ECF #74) "[a]fter further review of the facts of the case and applicable law." On September 4, 2020, the Court entered an Order (ECF #75), and on September 8, 2020, a Judgment (ECF #76), ruling that with the withdrawal of Cadle's Response, the converted Motions for Summary Judgment were granted, and Cadle's remaining claims were dismissed with prejudice, ending the Eastern District Action.

<u>First Amended Complaint in the Adversary Proceeding and Crescent's Additional Motions to Dismiss</u>

In the meantime, Cadle and Crescent moved forward with this Adversary Proceeding by filing an Amended Complaint on June 1, 2020. (ECF #74). The Amended Complaint is similar to the Original Complaint, and in general seeks to recover transfers from the Debtor to Consolidated (and its transferees) that were allegedly disguised as loans, including payments made from Consolidated to Crescent out of those transfers in order to pay down the loan from Crescent to Consolidated. The only claim against Crescent in the Amended Complaint is Count 4, which is the Trustee's claim for recovery against a transferee under § 550 of the Bankruptcy Code, which was asserted in the original Complaint as Count 6.

On July 24, 2020, Crescent filed another Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction (ECF #85), arguing that the Trustee lacked prudential standing to pursue the § 550 claim against Crescent because it had sold that cause of action to Cadle. On November 11, 2020, the Court denied the second Motion to Dismiss (ECF #99), concluding that the Litigation Agreement between the Trustee and Cadle, as amended, did not result in the Trustee transferring the § 550 claim to Cadle.

7

After the denial of its second Motion to Dismiss, Crescent filed its Answer and Affirmative Defenses on December 2, 2020 (ECF #105), and its Amended Answer and Affirmative Defenses on March 31, 2021 (ECF #105). One of the purposes of the Amended answer was to assert the affirmative defense of res judicata, which was omitted from Crescent's original answer.

On June 18, 2021, Crescent filed its third Motion to Dismiss in this action, along with a Motion for Partial Summary Judgment and a Motion to Reconsider Transferring Venue. The Motion to Dismiss raises two grounds for the dismissal of Crescent from this action: res judicata (arguing that the Complaint in the Eastern District is identical to the Amended Complaint here and thus the dismissal of the Eastern District Action should now bar this action) and, alternatively, lack of standing by the Trustee under Article III of the Constitution (arguing that because the stay was lifted and virtually all property of the estate abandoned to Cadle, the Trustee no longer has standing to pursue the § 550 claim). The Motion for Summary Judgment alleges that to the extent the Trustee's § 550 claims are based on alleged fraudulent conveyances under § 548 of the Code and the Louisiana Revocatory Action, then parts of those claims are prescribed. The other defendants have joined in the Motion for Summary Judgment.[9]  The Motion to Reconsider Transferring Venue again asks this Court to transfer this action to the Eastern District of Louisiana. Finally, Crescent also contends that this Court must render its decisions on these matters in the form of a report and recommendation because Crescent does not consent to this Court issuing a final judgment on the merits.

The Court took these matters under advisement following the hearing on all these matters in August 2021, and is now prepared to rule. The Court will consider each of Crescent's motions separately, and will consider the assertion that the Court's opinion must be in the form a report and recommendation at the end of this opinion. For the reasons that follow, the Court will deny Crescent's Motion to Dismiss, grant

---

[9] *See* Non-Crescent Bank Defendants' Joinder to and Memorandum in Support of Crescent Bank & Trust's Motion for Partial Summary Judgment (ECF #177).

in part and deny in part its Motion for Partial Summary Judgment, and deny the Motion to Reconsider Transferring Venue.

## Analysis

### Crescent's Motion to Dismiss (ECF #165)

The Motion to Dismiss raises two grounds for the dismissal of Crescent from this action. First, Crescent argues that res judicata bars the Trustee's action here because the Eastern District of Louisiana dismissed an action raising what Crescent asserts are essentially the same claims by Cadle, and the Trustee is now bound by that decision because Cadle and the Trustee are in privity with respect to those claims. Second, and alternatively, Crescent argues that the Trustee lacks standing under Article III of the United States Constitution because the transfers the Trustee seeks to avoid all involved property that was Cadle's collateral, in which the Trustee has no interest following the lifting of the stay and the abandonment of that property to Cadle. The Court will consider Crescent's arguments in the order presented by Crescent.

### *Res Judicata*

Although Crescent answered the Complaint and asserted res judicata as an affirmative defense, it is urging the court to rule on this defense in a motion to dismiss, rather than on the merits. The Fifth Circuit has long held that the affirmative defense of res judicata is generally not appropriate in a motion to dismiss but nevertheless may be resolved by the court if the plaintiff does not object to the procedure and the facts are undisputed. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). *See also Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 313–14 (5th Cir. 2020) ("Although *res judicata* generally cannot be raised in a motion to dismiss and should instead 'be pleaded as an affirmative defense,' dismissal under Rule 12(b)(6) is appropriate if the *res judicata* bar is apparent from the complaint and judicially noticed facts and the plaintiff fails to challenge the defendant's failure to plead it as an affirmative defense.") (citations omitted). Since the Trustee did not object to Crescent advancing its res judicata defense through a

9

Motion to Dismiss, the Court will determine whether it is viable based on the allegations in the Complaint, which will be accepted as true for this purpose, and from judicially noticed facts.[10]

The law governing the application of the doctrine of res judicata is well developed. "'Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit.'" *Petro-Hunt, L.L.C. v. U.S.*, 365 F.3d 385, 395 (5th Cir. 2004), quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999); *see also In re Paige*, 610 F.3d 865, 870 (5th Cir. 2010) (Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (internal quotation marks, citations, and footnote omitted)).The test for res judicata has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involve in both actions." *Id.* If these four elements are met, then the court must also determine whether any "previously unlitigated claim could or should have been brought in the earlier litigation." *Id.*

In this case there is no dispute over the competency of the court in the Eastern District Action or the finality of that judgment. The disputes here center on whether the parties and the claims and causes of action in the Eastern District Action are identical to those in this case. In testing for identity of parties, "courts have looked beyond the formal, or paper, parties," and "examine the parties in interest: Persons whose interests are properly placed before a court by someone with standing to represent them will be bound by matters determined in a proceeding before the court." *Hotel Corp. of South v. Rampart*, 46 B.R. 758, 764 (E.D. La. 1985). "Another aspect of the flexible rather than formal and technical view of the 'parties'

---

[10] *See, e.g.*, *Twombly*, 550 U.S. at 555-56 (for purposes of Rule 12 motions, the Court must apply "the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).").

requirement, is that a judgment entitled to res judicata effect bars relitigation not only by the parties, but also their privies." *Id.* at 765.

To determine whether two suits involve the same claim or cause of action, the Fifth Circuit adopts the transactional analysis of the Restatement (Second) of Judgments, § 24. *Petro-Hunt, L.L.C.* at 395-96. "Under that test, the preclusive effect of a prior judgment extends to all rights the original plaintiff had with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id.* (internal quotations and citations omitted). "The critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts." Id.* (emphasis in original).

The crux of Crescent's argument is that Cadle and the Trustee are in privity through the Litigation Agreement such that they should essentially be treated the same for purposes of res judicata. Crescent also argues that the Trustee should have joined Cadle in bringing her claim under the Bankruptcy Code in the Eastern District because the allegations and basis for Cadle's claims in the Eastern District are essentially the same as those asserted in this adversary proceeding. In other words, Crescent now argues that both Cadle's claims in the Eastern District and the Trustee's claims here arise out of the same nucleus of operative fact, such that they should have always been tried together.

Crescent's argument here flies in the face of the argument it made in its original Motion for Abstention, that Cadle and the Trustee's claims are so distinguishable that they should be tried not only separately, but in separate fora. At the inception of this action, Crescent argued that "there is no relation between the State Court Claims and the Bankruptcy Case, as the only potential relation is the supposed paltry percentage of proceeds recovered, if any, that would be assigned back to the Trustee as set forth in the . . . Litigation Agreement."[11]

Crescent also argued, in connection with its original Motion to Dismiss (which it adopted in its Motion for Abstention): "Whether plaintiffs have a community of

---

[11] *See* Crescent's Memorandum in Support of Motion for Abstention, p. 4 (ECF #44).

interests depends on whether the cumulated causes of action arise out of the same facts, or present the same factual or legal issues. Here, the cumulated causes of action in the Complaint do not present the same factual and legal issues."[12] Crescent further emphasized the differences between Cadle's state law claims against it and the Trustee's subsequent transferee claim against it under § 550 of the Bankruptcy Code:

> First, although all the claims against Crescent deal with certain transfers from Consolidated to Crescent, the relevant facts at issue in the State Court Claims as opposed to Count VI [the subsequent transferee claim] are different. The State Court Claims are based on Cadle's status as the purchaser of certain loans from the FDIC, as successor in interest to the receiver for First NBC, and Crescent's alleged interference with certain collateral Cadle allegedly had a security interest in. The Trustee has no such cause of action. The legal issues involved in the State Court Claims include, among other things, the validity of Cadle's alleged security interest and whether funds of the Debtor were subject to Cadle's alleged security interest. On the other hand, the facts at issue in Count VI of the Complaint involve, among other things, the existence of an antecedent debt or debts of the Debtor, the solvency or insolvency of the Debtor, Crescent's knowledge as to any voidablility of those transfers, and any value that Debtor received from Consolidated in connection with certain transfers. Thus, Count VI, which arises solely under the Bankruptcy Code, involves an analysis of all assets and all liabilities of the Debtor to determine if certain and specific facts exist in order to meet the statutory requirements necessary to maintain such actions and to recover or avoid the transfers complained of.[13]

In short, Crescent's entire earlier argument rested on its assertion that Cadle's claims and the Trustee's claims are factually and legally distinct and should not even be tried together, while the gist of Crescent's current argument is that both the parties and the claims are so closely linked that they *should* have been brought

---

[12] *See* Crescent's Memorandum in Support of Motion to Dismiss, p. 15 (ECF #42).

[13] *Id*. at pp. 15-16.

together, such that the Trustee's failure to bring her claims in the Eastern District Action results in them now being barred by res judicata.

Simply put, the Court will not countenance Crescent's complete about-face on these matters and concludes that Crescent is judicially estopped from taking a position contrary to its previous position because it was successful on its earlier arguments.

> Judicial estoppel precludes a party who has been successful in asserting a position in a legal proceeding from assuming the contrary position in a later proceeding, "especially if it be to the prejudice of the party who has acquiesced in the position formerly taken...." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895). *It "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001), quoting *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). The judicial estoppel doctrine seeks to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1038 (2d Cir. 1993). Its application, in the court's sound discretion, requires a determination that
>
>> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> *New Hampshire v. Maine,* 532 U.S. at 750–51, 121 S. Ct. 1808 (internal quotation marks and citations omitted).

*In re Stone Barn Manhattan LLC*, 405 B.R. 68, 77 (Bankr. S.D.N.Y. 2009) (emphasis added). *See also Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

13

Crescent's earlier position and its current position are diametrically at odds with one another. In its earlier Motion for Abstention, Crescent succeeded in convincing the Court that the claims of Cadle and the Trustee should be tried separately. Now, Crescent takes the opposite position and seeks to slam the door in the Trustee's face for failure to assert claims in the Eastern District of Louisiana, when one of the reasons this Court decided to abstain from Cadle's claims and allowed them to be tried in that forum was Crescent's persuasive argument that they are completely distinct.

Accordingly, consistent with its earlier ruling on the Motion for Abstention, the Court finds that Cadle and the Trustee are not in privity with respect to the claims at issue, and that Cadle's state law claims are not the same as the Trustee's claim under § 550 of the Bankruptcy Code for the same reasons Crescent successfully argued previously. Because Crescent has failed to show that the identity of the parties and the claims are the same in this action and in the Eastern District Action, it has failed to prove these essential elements of the doctrine of res judicata.

*Article III Standing*

Crescent's argument that the Trustee lacks Article III standing to assert the § 550 claim is a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1).[14] *See, e.g.*, *Wilson v Houston Community College System*, 955 F.3d 490, 494-95 (5th Cir. 2020).

> It is well settled in this circuit that '[t]he district court ... has the power to dismiss [pursuant to Rule 12(b)(1)] on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quoting *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989)). . . .

---

[14] The Court already rejected Crescent's previous Motion to Dismiss based on prudential standing, as the Trustee notes in its brief (ECF #187, p. 9), and that finding is the law of the case. Nevertheless, Crescent has argued that this Article III standing argument is different, and the Court will treat it as such for this ruling.

The requirement that a litigant have standing derives from Article III of the Constitution, which confines federal courts to "adjudicating actual 'cases' and 'controversies.'" *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002) (quoting U.S. Const. art. III, § 2, cl. 1). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Id.* at 560, 112 S. Ct. 2130 (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* (internal quotation marks and citations omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561, 112 S. Ct. 2130 (internal quotation marks and citation omitted).

*Moore v. Bryant*, 853 F.3d 245, 248-49 (5th Cir. 2017).

Crescent argues that the Trustee lacks standing because "[a]ll of the claims against Crescent relate to the allegations that monies used to pay the loan from Crescent to Consolidated were entirely from mineral interests owned by Destin or Reserves, and (as Cadle has alleged) were therefore subject to Cadle's security interest and were Cadle's collateral." Crescent's Memorandum in Support of Motion to Dismiss, p. 13 (ECF #166). Essentially, Crescent argues that the Trustee has suffered no cause in fact because the Trustee's claim against Crescent is entirely based on Cadle's collateral, in which the estate has no interest.

Based on the Court's review of the record of this adversary proceeding and the main bankruptcy case, the Court cannot conclude that the Trustee lacks standing to assert a claim against Crescent. Crescent points to the Court's March 6, 2018 Order Granting Motion to Modify Automatic Stay, entered in the main bankruptcy case (Case No. 17-51323, ECF #135), pursuant to which the stay was "lifted and partially

15

modified to allow The Cadle Company II, Inc., to take possession of any and all funds received by the trustee in this case that are attributable to the mineral interests of Destin Resources LLC or Reserves Management, L.C., and to apply those funds to the obligations owed to it," and furthermore ordered the Trustee to "abandon any such proceeds to The Cadle Company II, Inc., and to turn over all such sums as are currently in her possession, or that are received in the future, to The Cadle Company II, Inc., as they are received." *Id.* Cadle argues that as a result of that Order, all of the Trustee's claims necessarily concern Cadle's property, not the estate's property, and that the Trustee therefore has suffered no injury.

Crescent's argument runs into a problem based on the allegations of the Amended Complaint, which for purposes of Crescent's motion must be considered as true. A careful review of the Amended Complaint shows that the Trustee's claim against Crescent concerns both property that is allegedly Cadle's collateral *and* other property that may not, on the face of the complaint, be part of Cadle's collateral. Specifically, the Complaint alleges:

> 54. Because of the close relationship between Linder and Crescent's management and owners, because of daily updates by Linder to Crescent, and because of Crescent's access to the financial records of Linder and the Debtor, Crescent knew of the insider relationship between Consolidated and the Debtor, knew of First NBC's loan to Destin and Reserves for over $120,000,000, knew of First NBC's first-priority lien in their assets, and knew that the monies used by Consolidated to pay down Crescent's loans were received from the Debtor and were attributable to the mineral interests of Destin and Reserves **and/or the loan funds from First NBC**. For the same reasons, Crescent knew that Consolidated did not give reasonably equivalent value, or any value whatsoever, to the Debtor in return for the Transfers.

Amended Complaint, ¶ 54 (ECF #74) (emphasis added).

Crescent's Article III standing argument is premised on the fact that that the Trustee's claim entirely concerns Cadle's collateral, but the plain language of the Complaint shows that premise may be false, so Crescent's Motion to Dismiss for lack

of Article III standing must be denied. Because the Motion must be denied on that basis, the Court will not address at this time the effect that lifting of the stay as to Cadle's collateral may have on the Trustee's claims, if any.

Accordingly, the Court will deny Crescent's Motion to Dismiss based on res judicata and lack of standing for the reasons given.

### Motion for Partial Summary Judgment (ECF #162)

In its Motion for Partial Summary Judgment, Crescent argues that the Trustee cannot recover under 11 U.S.C. § 548(a) for fraudulent transfers made more than two years prior to the petition date of October 7, 2017, citing *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 762 (Bankr. W.D. La. 2013). The Trustee does not dispute this, and the Court agrees. Accordingly, Crescent's Motion will be granted in part as to any claims under § 548(a) for transfers occurring more than two years prior to the petition date.

Second, Crescent focuses on the Louisiana revocatory action, La. Civ. Code art. 2036, *et seq.*, which the Trustee brings under 11 U.S.C. § 544(b). Article 2041 sets forth the time period for bringing such actions under Louisiana law, and reads (subject to an amendment the Court will briefly address later) as follows:

> The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.
>
> The three year period provided in this Article shall not apply in cases of fraud.

La. Civ. Code art. 2041.

The exception for cases of fraud (i.e., that "the three year period provided in this Article shall not apply in cases of fraud") was added in an amendment made effective August 1, 2013, and the parties dispute the effect of that amendment. Crescent argues that the amendment adding the fraud exception applies only prospectively and bars any action on transfers made prior to August 1, 2013. That would be because, absent the fraud exception, the three-year peremptive period for

any transfers necessarily would have passed well before the October 1, 2017 petition date. Crescent cites *In re Robinson*, 541 B.R. 396, 400 (Bankr. E.D. La. 2015), in which the court held that the 2013 amendment was substantive and thus could not be applied retroactively. That opinion, however, did not cite any case law, much less cases from Louisiana courts addressing the retroactive application of amendments to existing statutes on prescription.

On the other hand, the Trustee argues that prescriptive and peremptive periods are procedural in nature and therefore by default apply retroactively. The Trustee cites cases in support of its contentions as well.

The Court has examined Louisiana law on this issue and concludes, based on clear and unambiguous reasoning by the Louisiana Supreme Court, that the truth is somewhere between the parties' positions. Specifically, while changes to prescriptive and peremptive statutes are procedural and thus are retroactive by default, those amendments cannot be used to revive an already expired cause of action (which would deprive a defendant of the right to plead prescription or peremption), nor can they be used to shorten the time period of an existing cause of action (which would deprive a plaintiff of the right to bring the action).

The Louisiana Supreme Court has explained this general rule as follows:

> The Louisiana Revised Statutes are not applied retroactively "unless it is expressly so stated." La. R.S. 1:2. However, the Louisiana Civil Code makes clear that this rule of statutory construction applies to substantive laws only. In the absence of contrary legislative expression, procedural and interpretive laws apply both prospectively and retroactively. La. C.C. art. 6. "[S]tatutes of limitation [the common-law analog to statutes of peremption or prescription] are remedial in nature and as such are generally accorded retroactive application." *Lott v. Haley,* 370 So. 2d 521, 523 (La. 1979). La. R.S. 9:2772 does not expressly state that it may be applied retroactively. However, it is a procedural law, establishing a period after which a plaintiff may no longer assert a claim. Subject to the caveat that it may not operate to disturb a vested right, § 2772 may be applied retroactively.

18

*Ebinger v. Venus Const. Corp.*, 65 So. 3d 1279, 1285 (La. 2011).

As to what constitutes disturbing a vested right, the Louisiana Supreme Court has explained:

> The matter before us presents a different question: does the retroactive application referred to in article 6 extend to revive previously time barred causes of action. Although prescriptive statutes are generally procedural in nature, the revival of an already prescribed claim presents additional concerns. For while the defendant does not acquire anything during the running of the prescriptive period, once the time period has elapsed, the legislature grants the defendant the right to plead the exception of prescription in order to defeat the plaintiff's claim. La. Code Civ. P. arts. 927 & 934. Because the defendant acquires the right to plead the exception of prescription, a change in that right constitutes a substantive change in the law as applied to the defendant. *See St. Paul Fire & Marine Ins. Co. v. Smith,* 609 So. 2d 809, 817 (La. 1992) ("Substantive laws either establish new rules, rights, and duties or change existing ones."); *Thomassie v. Savoie,* 581 So.2d 1031, 1034 (La. App. 1st Cir. 1991) ("[I]f a statute which is remedial or procedural also has the effect of making a change in the substantive law, it must be construed to operate prospectively only."). Thus, were we to interpret the amendment at issue to allow the revival of prescribed causes of action, the substantive rights of the defendant would be materially changed because he would be stripped of this acquired defense. Guided by the principles established in article 6, we require, at the very least, a clear and unequivocal expression of intent by the legislature for such an "extreme exercise of legislative power."

*Chance v. Am. Honda Motor Co.*, 635 So. 2d 177, 178 (La. 1994). Similarly, a statutory amendment that shortens the prescriptive period applies prospectively only because to do otherwise would deprive a plaintiff of the vested right to bring an action under the previously established longer period. *See, e.g.*, *Falgout v Dealers Truck Equipment Co.*, 748 So. 2d 399 (La. 1999) (holding that an amendment adding a one-year prescriptive period to a right of action could not deprive the plaintiff of his right to

file under the previous version of the statute, which included no prescriptive period at all).

Thus, under the above directives from the Louisiana Supreme Court, the relevant question is not whether a change in a peremptive period is substantive or procedural in the abstract (though the Louisiana Supreme Court makes it clear that peremption is procedural in nature) but rather on whether such a change has the effect of divesting a party of vested rights under the specific facts of a case. Here, the question is whether the 2013 amendment adding the exception for fraud would divest Crescent of the right to plead peremption on any of the claims against it. That would only be true as to a claim that had already been perempted as of the effective date of the amendment, August 1, 2013. Given the three year peremptive period, that would mean any claim for transactions occurring prior to August 1, 2010. Any claim for transactions occurring after August 1, 2010 would have still been alive on August 1, 2010 and thus would be subject to the new fraud exception. Accordingly, the Court will grant Crescent's Motion for Partial Summary Judgment in part as to any Louisiana revocatory action claim for transactions occurring prior to August 1, 2010, but otherwise deny the motion in part.

Finally, the Court notes that the Louisiana Legislature recently amended the statute once again, effective August 1, 2021, to remove the fraud exception. However, because the amendment cannot divest the Trustee of the vested right to bring the action under the previous version of the statute for the reasons already explained, this amendment must be applied prospectively only.

Thus, Crescent's Motion for Partial Summary Judgment will be granted in part as to claims under § 548(a) for transactions occurring more than two years prior to the petition date and under the Louisiana revocatory action (as applicable under § 550) for claims occurring prior to August 1, 2010, but will otherwise be denied.

<u>Crescent's Motion to Reconsider Transferring Venue (ECF #172)</u>

Finally, Crescent's Motion to Reconsider Transferring Venue requests the Court to reconsider its previous decision denying a transfer to the Eastern District of

Louisiana for the convenience of the parties. The Motion raises no new facts that were not already considered by the Court, and the Court stands by its decision. Accordingly, Crescent's Motion to Reconsider will be denied.

### Court's Authority to Rule

Finally, the Court rejects Crescent's assertion that *Stern v. Marshall*[15] requires this Court's rulings on the matters presently before it to be in form of proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1). Because the Court is not dismissing all of the Trustee's claims against Crescent, the Court's ruling here is interlocutory. As a result, *Stern v. Marshall* is not implicated, and the Court may enter its ruling on Crescent's motions directly. *See In re Louisiana Safety Ass'n of Timbermen – Self I,* No. AP 17-8003, 2018 WL 4043228, at *3 (Bankr. W.D. La. Aug. 22, 2018) (the court may issue interlocutory orders in proceedings in which it does not have authority to enter a final judgment); *In re Provident Royalties, LLC*, 581 B.R. 185, 190 (Bankr. N.D. Tex. 2017) (same); *In re TMG Liquidation Co.*, No. ADV 11-80212-HB, 2012 WL 4467552, at *1 (Bankr. D.S.C. Sept. 26, 2012) (same) (collecting cases).

### Conclusion

For the reasons set out above, Crescent's Motion to Dismiss (ECF #165) and Motion to Reconsider Transferring Venue (ECF #172) will be denied. Crescent's Motion for Partial Summary Judgment (ECF #162) will be granted in part as to any claims under 11 U.S.C. § 548 for transfers occurring more than two years prior to the petition date and as to any Louisiana revocatory action for transfers that occurred prior to August 1, 2010, three years prior to the amendment of La. Civ. Code art. 2041, but otherwise the Motion will be denied.

---

[15] 564 U.S. 462, 131 S. Ct 2594, 180 L. Ed. 2d 475 (2011).